UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT J. GRAESSLE and MICHAEL NOLAN, individually, and as Representatives of a Class of Participants and Beneficiaries of The MathWorks 401(k) Retirement Plan,

Plaintiffs,

v.

THE MATHWORKS, INC., BOARD OF DIRECTORS OF THE MATHWORKS, INC., and PLAN ADVISORY TEAM OF THE MATHWORKS 401(K) RETIREMENT PLAN,

Defendants.

Case No.

Class Action Complaint Under 29 U.S.C. § 1132(a)(2)

# COMPLAINT

Plaintiffs Robert J. Graessle and Michael Nolan ("Plaintiffs"), individually and as representatives of a Class of Participants and Beneficiaries of The MathWorks, Inc. 401(k) Retirement Plan ("Plan" or "MathWorks Plan"), by their counsel, WALCHESKE & LUZI, LLC, and JONATHAN M. FEIGENBAUM, ESQ., allege and assert to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

## I. INTRODUCTION

1. Plaintiffs Robert J. Graessle and Michael Nolan bring this action under 29 U.S.C. § 1132(a)(2) on behalf of the Plan and the Plan's participants and beneficiaries against Defendants The MathWorks, Inc. ("MathWorks"); the Board of Directors of The MathWorks, Inc. ("Board"), and the Plan Advisory Team of the MathWorks 401(k) Retirement Plan ("Plan Advisory Team") (collectively, "Defendants," "MathWorks," or "MathWorks Defendants") for breach of fiduciary duties under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 ("ERISA").

2. The MathWorks Defendants are fiduciaries to the MathWorks Plan.

**Imprudent Investment Claim**

3. As fiduciaries, the MathWorks Defendants have an obligation to prudently curate a menu of investment options for the MathWorks Plan. They must regularly monitor those investment options and remove ones that become imprudent. The Plan's participants, who are current and former MathWorks employees, can invest their retirement savings in any of the funds that the MathWorks Defendants select for the MathWorks Plan.

4. On or before 2009, the Plan Advisory Team selected the NYLI Winslow (Mainstay) Winslow Large Cap Growth Class I (ticker MLAIX), as an investment option for the MathWorks Plan (the "NYLI Winslow Fund" or the "Fund"). The Committee has retained the NYLI Winslow Fund, whether organized as a mutual fund or collective investment trust, since at least 2009.

5. The NYLI Winslow Fund is a large-cap growth strategy managed by New York Life Investment Management at the top level, but the actual investment subadvisor is Winslow Capital Management. Morningstar[1] classifies the NYLI WINSLOW Fund as a large-cap growth fund.

6. The NYLI Winslow's benchmark is typically the Russell 1000 Growth Index. The portfolio is heavily tilted toward technology and other high-growth sectors.

7. Large-cap growth funds typically pursue a strategy of investing in the stock of large companies with high growth potential. They are a popular category of investment. As a result, the Plan's fiduciaries had (and have) hundreds of different large-cap growth funds to choose from when selecting investment options for the Plan. Yet, the NYLI Winslow Fund has been the only Large-Cap Growth option Defendants have made available to the Plan's participants since 2009, if not earlier.

---

[1] Morningstar is the leading provider of independent investment research products (e.g., data and research insights on managed investment products, publicly listed companies, and private capital markets) for individual investors, financial advisors, asset managers, retirement plan providers and sponsors, and institutional investors in the private capital markets in North America, Europe, Australia, and Asia.

8. The NYLI Winslow Fund is an "actively managed" fund. The investment advisers of active funds charge investors fees on the premise that they will pick investments that outperform a market benchmark. Accordingly, if an investment adviser of an actively managed fund cannot beat or at least match its benchmark, then it has failed to meet the primary objective for which it was hired. "Passive funds," by contrast, replicate the investment holdings of those market benchmarks; they are designed to match (but not beat) benchmarks. They therefore require less effort to manage than actively managed funds and carry far lower fees.

9. The NYLI Winslow Fund failed its primary objective: it could not beat its benchmark. From 2016 to 2025, the cumulative investment performance of the NYLI Winslow Fund lagged its designated benchmark—the Russell 1000 Growth Index[2]—*over the preceding three-, five-, and ten-year periods* in seven out of ten years. In three of the ten years, the fund beat its benchmark in only one of the three performance calculations (3-year return in 2019 and 2020 and 5-year return in 2021). The fund's underperformance was not isolated to a particular market cycle or short-term period. Rather, the underperformance persisted across multiple rolling time horizons and market environments, suggesting a sustained inability to add value relative to its own stated benchmark. Participants paid active-management fees without receiving persistent active-management outperformance.

10. Moreover, the Fund underperformed other large-cap growth alternatives over the same three-, five-, and ten-year stretches. Faced with the Fund's long-term poor performance, a prudent fiduciary would have removed the Fund well before but not later than January 2020.

---

[2] The Russell 1000 Growth Index is independently maintained by FTSE Russell, a wholly-owned subsidiary of the London Stock Exchange Group. FTSE Russell is a leading global provider of benchmarking, analytics, and data solutions for investors with over 30 years in the business. The Russell 1000 Growth Index measures the performance of the large-cap growth segment of the U.S. stock market. It includes those Russell 1000 companies with relatively higher price-to-book ratios, higher forecast medium-term growth, and higher sales-per-share historical growth (i.e., growth companies).

11. Yet, MathWorks took no action. It continued to include the NYLI Winslow Fund in the Plan's lineup despite a market teeming with hundreds of large-cap growth alternatives. Some of these alternatives clearly offered participants better value for their money. For example, the Voya Russell Large Cap Growth Index Port I Fund not only performed better than the NYLI Winslow Fund, but it also charged participants a significantly lower fee.

12. The NYLI Winslow Fund's poor performance continued through the Class Period, which commences May 21, 2020, and continues through the date of judgment.

13. As of December 31, 2024, Plan participants had invested about $147 million of their retirements savings in the NYLI Winslow Fund. Overall, about 8 percent of all Plan assets were invested in the Fund. As described in Section VIII, by failing to remove the NYLI Winslow Fund, Defendants caused participants to lose millions of dollars in retirement savings since the start of the Class Period.

14. As fiduciaries of the Plan, Defendants are duty-bound to monitor the Plan's investments and protect participants from these flagrant blow-ups by removing them from the Plan's investment lineup. Yet Defendants repeatedly refused to remove the NYLI Winslow Fund despite more than ten years of poor performance. A prudent fiduciary would have removed the Fund well before but not later than the start of the Class Period, and certainly during the ensuing years of poor performance throughout the Class Period. Defendants' conduct has not been prudent.

15. To remedy MathWorks's breach of fiduciary duty, Plaintiffs bring this action on behalf of the Plan, its participants, and their beneficiaries under 29 U.S.C. § 1132(a)(2) to enforce the MathWorks Defendants' personal liability under 29 U.S.C. § 1109(a) to make good to the Plan all losses resulting from each breach of fiduciary duty occurring during the Class Period. In addition, Plaintiffs seek such other Plan-wide equitable or remedial relief for the Plan as the Court may deem appropriate.

**Forfeiture Claim**

16. During the Class Period (May 21, 2020, to the present), Defendants utilized the MathWorks' Plan's forfeitures, a type of plan asset, to benefit themselves by reducing their future employer matching contributions to the Plan, violating ERISA's fiduciary duties of loyalty and prudence.

17. Plan forfeitures should have been used to also pay Plan administrative expenses instead of exclusively making employer matching contributions and by failing to do so, Defendants breached their duties of loyalty and prudence to Plan participants.

18. More specifically, and as set forth in more detail below, Plaintiffs allege that Defendants: (a) improperly utilized forfeited Plan assets exclusively to disloyally reduce future employer matching contributions which favored the employer's financial interests over participants' interests; (b) did not engage in a prudent process when deciding to use Plan forfeitures for the employer's own benefit rather than to reduce Plan expenses; and (c) failed to monitor those responsible on the Plan Committee for allocation of Plan forfeitures.

19. Plaintiffs' forfeiture claims are brought on behalf of the Plan and seek equitable remedies for losses suffered by the Plan under 29 U.S.C. §§ 1132(a)(2) and 409(a).

20. Plaintiffs suffered concrete injuries to their Plan accounts because they invested in the NYLI Winslow Fund during the Class Period and paid Plan administrative expenses that could have been reduced or eliminated had forfeitures been allocated differently. Those injuries are fairly traceable to Defendants disloyally and imprudently using Plan forfeitures for their own benefit to reduce their future contributions to the MathWorks Plan and retaining the NYLI Winslow Fund as an investment option, and these injuries diminished the savings in Plaintiffs' retirement accounts.

21. Having established Article III standing, Plaintiffs may seek recovery under 29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2), on behalf of the Plan and for relief that sweeps beyond their own

injuries.

22. Plaintiffs did not have knowledge of all material facts (including, among other things, comparisons of the Plan's investment performance relative to other available investment alternatives and understanding how Plan forfeitures were being allocated) necessary to understand that the MathWorks Defendants breached their fiduciary duties in violation of ERISA until shortly before filing this Complaint. Further, Plaintiffs do not have actual knowledge of the specifics of the MathWorks Defendants' decision-making processes with respect to the Plan, including the MathWorks Defendants' processes for monitoring and removing Plan investments and allocating Plan forfeitures, because this information is solely within the possession of the MathWorks Defendants prior to discovery. For purposes of this Complaint, Plaintiffs have drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth herein.

## II. PARTIES

### A. Plaintiffs

23. Plaintiff Robert J. Graessle brings this suit in a representative capacity on behalf of the Plan and its participants and beneficiaries pursuant to 29 U.S.C. § 1132(a), seeking appropriate Plan-wide relief under 29 U.S.C § 1109 to protect the interests of the Plan. Plaintiff Graessle is a participant, as defined in 29 U.S.C. § 1002(7), in the MathWorks Plan during the Class Period. Plaintiff Graessle suffered individual injury by investing in the NYLI Winslow Fund and by not having his Plan expenses covered in part or in whole by Plan forfeitures.

24. Plaintiff Michael Nolan brings this suit in a representative capacity on behalf of the Plan and its participants and beneficiaries pursuant to 29 U.S.C. § 1132(a), seeking appropriate Plan-wide relief under 29 U.S.C § 1109 to protect the interests of the Plan. Plaintiff Nolan is a participant, as defined in 29 U.S.C. § 1002(7), in the MathWorks Plan during the Class Period. Plaintiff Nolan suffered individual injury by investing in the NYLI Winslow Fund and by not having his Plan expenses

covered in part or in whole by Plan forfeitures.

**B. Defendants**

25. MathWorks is a privately held software company best known for developing MATLAB and Simulink, widely used by engineers, scientists, researchers, and universities for mathematical computing, data analysis, modeling, and simulation. The company employs more than 6,500 people worldwide and is headquartered at 1 Apple Hill Drive, Natick, Massachusetts 01760.

26. MathWorks is the Plan Sponsor and Plan Administrator. As Plan Sponsor, MathWorks acts through its Board of Directors.

27. As required by 29 U.S. C. § 1102(a)(1), the Plan is established and maintained by a written plan document, The MathWorks 401(k) Retirement Plan ("Plan document").

28. MathWorks chose Charles Schwab ("Schwab") to provide Plan administrative services during the Class Period.

29. MathWorks caused the Plan and its participants to pay Plan administrative fees to Schwab during the Class Period.

30. Consequently, Plan participants paid Plan administrative fees because Schwab were paid direct compensation from the Plan as disclosed on Form 5500 Schedule C from 2020 to 2024. Moreover, the Plan participant fee disclosures indicate that there are Plan administrative fees that are deducted from Plan participant accounts.

31. The Board of Directors of MathWorks ("Board of Directors") is responsible for appointing and monitoring individuals responsible for administering and managing the MathWorks Plan, including those on the Plan Advisory Team, who are responsible for selecting and monitoring Plan investments. All of these individuals serve at the pleasure of the Board of Directors.

32. The Plan Advisory Team of the MathWorks Plan ("Plan Advisory Team") functions as the investment oversight committee for the 401(k) plan. It is responsible for determining

appropriateness of the Plan's investment offerings and monitoring investment performance, among other duties.

33. Current and former members of the Plan Advisory Team, as well as those employees who have been appointed to manage and operate the MathWorks Plan, are fiduciaries of the MathWorks Plan under 29 U.S.C. § 1002(21)(A) because they exercise discretionary authority and/or discretionary control respecting management of the Plan.

## III. JURISDICTION, VENUE, AND STANDING

34. This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because it is an action under 29 U.S.C. § 1132(a)(2).

35. This District is the proper venue for this action under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because it is the District in which the subject Plan is administered and where at least one of the alleged breaches took place. It is also the District in which the MathWorks Defendants reside.

36. As participants in the Plan and holders of the NYLI WINSLOW Fund, Plaintiffs have standing to bring claims on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2), and they are participants seeking appropriate Plan-wide relief under 29 U.S.C. § 1109. Thus, Plaintiffs bring this suit under § 1132(a)(2) in a representative capacity on behalf of the Plan as a whole and seek remedies under § 1109 to protect the Plan.

## IV. ERISA'S FIDUCIARY STANDARDS

### A. Overview of ERISA's Fiduciary Duties of Loyalty and Prudence

37. ERISA exists, in large part, to protect the interests of participants, and their beneficiaries, in employee retirement plans. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citing 29 U.S.C. § 1001(b)).

38. "[A]ny person who exercises discretionary authority or control in the management or administration of an ERISA plan" is, under the statute's terms, a fiduciary. *See Barchock v. CVS Health Corp.,* 886 F.3d 43, 44 (1st Cir. 2018) (citing 29 U.S.C. § 1002(21)(A)).

39. ERISA imposes strict duties of loyalty and prudence upon fiduciaries of retirement plans, like the MathWorks Plan, that are covered by ERISA.

40. ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; [and] (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of like character and with like aims." ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B).

41. ERISA's fiduciary duties are "the highest known to the law." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016) (en banc) (internal quotation marks omitted).

42. Even in a defined contribution plan in which participants choose their investments, plan fiduciaries must conduct their own independent evaluation to determine which investments may be prudently included in the plan's menu of options. *Hughes v. Nw. Univ.*, 595 U.S. 170, 176 (2022).

43. As part of its fiduciary duty, MathWorks "has a continuing duty to monitor [plan] investments and remove imprudent ones." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015). That "continuing duty" exists "separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments." *Id.* "A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Id.* at 530. If an investment is imprudent, MathWorks "must dispose of it within a reasonable time." *Id.* (citation omitted).

44. The inquiry into the duties of loyalty and prudence is "context specific." *Id.*

45. Defendants are ERISA fiduciaries as they exercise discretionary oversight, authority, or control over the MathWorks Plan that it sponsors and provides to its employees.

46. Defendants failed to fulfill their duty to loyally and prudently control the manner in which forfeitures were utilized by the Plan and by which investments were selected and retained by the Plan.

### B. Fiduciary Liability Under ERISA

47. Under 29 U.S.C. § 1109, fiduciaries to the Plan are personally liable to make good to the Plan any harm caused by their breaches of fiduciary duty. Section 1109(a) provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to *such plan* any losses to the plan resulting from each such breach, and to restore to *such plan* any profits of such fiduciary which have been made through use of assets of the plan by fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

48. 29 U.S.C. § 1132(a)(2) is the enforcement mechanism of 29 U.S.C. § 1109. It enables participants and beneficiaries to bring civil actions to seek appropriate relief under 29 U.S.C. § 1109.

### C. Co-Fiduciary Liability

49. ERISA provides for co-fiduciary liability where a fiduciary knowingly participates in, or knowingly fails to cure, a breach by another fiduciary. Specifically, under 29 U.S.C. § 1105(a), a fiduciary shall be liable for a breach of fiduciary duty by a co-fiduciary if:

i. he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

ii. by his failure to comply with [29 U.S.C. § 1104(a)(1)] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

iii. he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

## V. THE PLAN

50. The MathWorks Plan is a defined contribution plan described in Section 401(k) of the Internal Revenue Code, I.R.C. § 401(k) (1986) (hereinafter denoted as "the Code"), and is subject to the provisions of ERISA.

51. During the Class Period, the Plan provided for retirement income for approximately 5,000 MathWorks employees, former employees, and their beneficiaries (the "Plan participants"). Defendants exclusively controlled the selection and retention of the Plan's investment options. Participants' retirement account balances primarily depended on contributions they made to their accounts, MathWorks' matching contributions, and the performance (net of fees and expenses) of the Plan's investment options.

52. As of December 31, 2024, Plan participants had invested over $1.8 billion in the 401(k) Plan. Approximately $147 million in the 401(k) Plan—or about 8%—was invested in the NYLI Winslow Fund.

53. The MathWorks Plan is funded by a combination of wage withholdings by Plan participants and Company contributions, each of which is deposited into the Plan's trust fund.

54. In accordance with 29 U.S.C. § 1103(a), the assets of the MathWorks Plan are held in a trust fund. Upon their deposit into the Plan's trust fund, all participant contributions and MathWorks contributions become ***assets of the Plan***.

55. The fiduciary duties of prudence and loyalty under ERISA, are violated where, as here, the employer (1) is both the plan sponsor and plan administrator; (2) is faced with a conflict of interest in choosing between allocating plan assets toward offsetting its own contributions to the Plan or defraying plan expenses that would otherwise be borne by Plan participants; (3) fails to conduct any investigation as to which choice would be in the best interest of the participants; and (4) decides to allocate all those plan assets toward reducing its own plan contributions because that choice best serves

its own interests.

56. Forfeitures are the nonvested portion of a participant's account that is lost upon termination of employment.

57. The MathWorks Plan gave the Plan Committee a discretionary choice about how to use the forfeitures each year.

58. Under the terms of the MathWorks Plan, Plan forfeitures of the non-vested portion of terminated employees' accounts may be used to pay eligible Plan expenses or reduce future employer matching contributions.

59. The use of the word "or" imbues this Plan language with discretion. So, when the time came to actually exercise the discretion provided by the Plan, to determine whether forfeitures would be allocated toward Plan administrative expenses or toward reducing MathWorks' contributions, those decisions were made in a fiduciary capacity.

60. Unless Defendants choose to allocate the forfeitures to pay Plan expenses, the Plans' administrative expenses are charged to the Plan participants' accounts. Both Plaintiffs paid administrative expenses out of their Plan accounts because MathWorks discretionarily decided to exclusively reduce future company contributions rather than reduce or eliminate any Plan expenses on their behalf as permitted under the Plan.

## VI. OVERVIEW OF INVESTMENT FUNDS

61. An investment fund (or mutual fund) is a pool of money contributed by a group of investors with similar investment objectives. The investment adviser takes this pool of money and invests in different stocks on behalf of all investors in the fund. The investment adviser manages the investments in each fund in accordance with the investment objectives and strategies set forth in each fund's investment guidelines. For providing this service, the investment adviser charges the fund an investment advisory fee.

**A. Active vs. Passive Management**

62. The NYLI WINSLOW Fund is an actively managed fund—that is, a fund that relies on the professional judgment of its investment adviser to make decisions about the fund's portfolio of investments. For the NYLI WINSLOW Fund, Winslow decides which industries they wish to allocate assets to, as well as what stocks to buy and sell and when. The NYLI WINSLOW Fund pays Winslow a fee for these services—a fee which the NYLI WINSLOW Fund passes on to investors, including the Plan's participants. Winslow's primary focus should be to outperform the benchmark it selected for the Fund: the Russell 1000 Growth Index. Indeed, Winslow charges fees for active management on the premise that it can pick a mix of stocks that beat the benchmark.

63. Active managers run the risk that their methods and analyses, including models, tools, and data, may be flawed or incorrect and may not achieve the fund's aim. This could cause the fund to lag its benchmark. Market research suggests the vast majority of active managers fail to beat their benchmarks. Given that active managers are paid to beat their benchmark, chronic underperformance is a red flag that suggests investors are not getting their money's worth and should consider other investment options.

64. Investment research and analysis typically drive the investment decisions of actively managed funds. Factors that an investment adviser may consider include, but are not limited to, market trends, a company's financial condition, perceived risk of investing in the company, industry and sector outlook, and the underlying stock's performances in various market conditions. Based on their respective professional judgment, one investment adviser may like consumer stocks while another may like technology stocks, while a third may like stocks whose issuers focus on environmental, social, and governance (ESG) issues.

65. Without variations between portfolio holdings, all large-cap stock funds would own identical investment portfolios and have nearly identical investment performance. Active management

offers investors the opportunity to earn superior returns through the astute selection of investments. Astute selection typically drives superior investment performance over time and distinguishes the better-performing funds from the underperforming ones. Bad asset allocation and poor investment selection generally drive long-term underperformance.

66. Actively managed funds stand in contrast to passively managed funds, or index funds, whose objective is to replicate the holdings and investment performance of a designated benchmark index. Other than constructing a portfolio that passively tracks that of the benchmark, the investment adviser makes little, if any, investment decisions for an index fund. Compared to actively managed funds, the fees for index funds are significantly lower.

**B. Investment Aims of Large-Cap Growth Funds**

67. The NYLI WINSLOW Fund is a large-cap growth fund. The stocks of the biggest companies typically dominate these funds. The principal aim of large-cap growth funds is to provide investors with long-term growth of capital.

68. The NYLI WINSLOW Fund has a growth style. Funds with a growth style invest in stocks of companies that are projected to grow faster than other stocks. Growth is defined based on fast growth (high growth rates for earnings, sales, book value, and cash flow) and high valuations (high price ratios and low dividend yields).

**C. Investment Risks of Large-Cap Growth Funds**

69. The principal categories of risks for the NYLI WINSLOW Fund include market risk, issuer risk, and the risk of investing in growth-oriented stocks.

70. Market risk is the chance that stock prices overall will decline. Stock markets tend to move in cycles, with periods of rising prices and periods of falling prices, so each fund is subject to the risk that the market as a whole will fall.

71. Issuer risk is the chance that prices of, and the income generated by, individual

securities of companies held by the fund (e.g., AT&T) may decline in response to various factors directly related to the issuers of such securities, including reduced demand for an issuer's goods or services, poor management performance, major litigation, investigations, or other controversies related to the issuer.

72. Investing in growth-oriented stocks also carries risk. Such stocks (e.g., Tesla) may experience larger price swings and greater potential for loss than other types of stocks, such as those that are considered value-oriented or those that historically have paid continuous dividends (e.g., Bristol Myers).

### D. Potential Investment Rewards of Actively Managed Large-Cap Growth Funds: Fiduciaries Select Benchmarks to Evaluate Achievement of Potential Rewards

73. Investments exist in a world ruled by investment performance. Typically, investors want a portfolio that consists of investments that meet or exceed their respective benchmarks. Whether an investment performs well is concrete rather than abstract.

74. For an actively managed investment fund, the potential reward is that the fund will deliver positive investment returns that exceed those of its benchmark. Investment advisers select benchmarks that they believe have similar aims, risks, and potential rewards as those of their fund.

75. Winslow selected the Russell 1000 Growth Index as the benchmark for the NYLI WINSLOW Fund. The Russell 1000 Growth Index is independently maintained by FTSE Russell, a wholly-owned subsidiary of the London Stock Exchange Group. FTSE Russell is a leading global provider of benchmarking, analytics, and data solutions for investors with over 30 years in the business. The Russell 1000 Growth Index measures the performance of the large-cap growth segment of the U.S. stock market. It includes those Russell 1000 companies with relatively higher price-to-book ratios, higher forecast medium-term growth, and higher sales-per-share historical growth (i.e., growth companies).

## VII. THE NYLI WINSLOW FUND AND ITS COMPARATORS AND BENCHMARK

### A. NYLI Winslow Fund (MLAIX)

76. On or before 2009, the MathWorks selected the NYLI Winslow Fund as an investment option for the Plan. The NYLI Winslow Fund was organized as a mutual fund.

77. The NYLI Winslow Fund's aim is to seek long-term growth of capital.

78. The NYLI Winslow Fund is managed by Winslow.

79. The Fund pursues its aim by investing primarily in large U.S. companies believed by its managers to possess above-average earnings growth potential. The Fund employs a bottom-up fundamental research strategy focused on identifying companies with sustained revenue and earnings growth, durable competitive advantages, and strong management execution, rather than merely tracking a market index. Consistent with this strategy, the Fund maintains significant exposure to growth-oriented sectors such as technology, communication services, consumer discretionary, and healthcare, and typically holds a concentrated portfolio of securities selected through the discretionary judgment of portfolio management.

80. Winslow may include in the NYLI Winslow Fund any stock within the U.S. large-cap growth universe.

81. Winslow has designated the Russell 1000 Growth Index as the Fund's benchmark.

82. Currently, approximately 80% of the Fund's portfolio is invested in large-cap stocks, consistent with the Fund's stated policy of investing at least 80% of its assets in companies with market capitalizations generally exceeding $4 billion at the time of purchase.

83. The overwhelming majority of the portfolio is also invested in growth-oriented equities, as reflected by Morningstar's classification of the Fund in the "Large Growth" category. The remainder of the portfolio is generally invested in a limited amount of foreign securities, cash or cash equivalents, and other ancillary holdings permitted under the Fund's investment strategy.

84. The NYLI Winslow Fund's potential rewards are that it will generate positive investment returns that outperform its benchmark index. The NYLI Winslow Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks. The NYLI Winslow Fund's own reported portfolio statistics reflect meaningful market risk, including a three-year beta of approximately 1.05 and a standard deviation of approximately 16.0, both indicative of substantial volatility consistent with aggressive growth-oriented equity investing.

85. The NYLI Winslow Fund is hardly the only large-cap growth fund on the market with the same mix of aims, risks, and potential rewards as described above. As set forth below, numerous substantially similar funds have existed throughout the Class Period.

**i. Comparator 1: Fidelity Blue Chip Growth K Fund (FBGKX)**

86. The Fidelity Blue Chip Growth K Fund (the "Fidelity Blue Chip Fund") has similar aims, risks, and potential rewards to those of the NYLI WINSLOW Fund.

87. Like the NYLI Winslow Fund, the Fidelity Blue Chip Fund is an actively managed large-cap growth fund.

88. The Fidelity Blue Chip Fund's aim is to seek capital appreciation. The Fidelity Blue Chip Fund pursues its aim by investing primarily in common stocks of companies that have above-average growth potential and normally invests at least 80% of its assets in blue-chip companies—companies that are well-known, well-established, and well-capitalized—which generally have large or medium market capitalizations.

89. Like the NYLI Winslow Fund, the Fidelity Blue Chip Fund identifies the Russell 1000 Growth Index as one of its benchmarks.

90. Morningstar classifies the Fidelity Blue Chip Fund as a large-cap growth fund. Currently, approximately 84% of the Fidelity Blue Chip Fund's portfolio is invested in large-cap

stocks, and 46% is invested in growth-oriented stocks. The remainder is invested in bonds, cash, and cash equivalents.

91. The Fidelity Blue Chip Fund's potential rewards are that the fund will generate positive investment returns that outperform its benchmark index. The Fidelity Blue Chip Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

92. The aims, risks, and potential rewards of the Fidelity Blue Chip Fund are similar to those of the NYLI Winslow Fund given the similarities in the two funds' investment strategies and the types of stocks the two funds own. Moreover, both funds are actively managed investment options that seek to outperform relative to the same benchmark, the Russell 1000 Growth Index. These facts make the Fidelity Blue Chip Fund a meaningful comparator to the NYLI Winslow Fund.

**ii. Comparator 2: Fidelity Growth Company K Fund (FGCKX)**

93. The Fidelity Growth Company K Fund (the "Fidelity Growth Fund") has similar aims, risks, and potential rewards to those of the NYLI Winslow Fund.

94. Like the NYLI Winslow Fund, the Fidelity Growth Fund is an actively managed large-cap growth fund.

95. The Fidelity Growth Fund's aim is to seek capital appreciation. The Fidelity Growth Fund pursues its aim by investing primarily in common stocks of companies that have above-average growth potential and normally invests at least 85% of its assets in blue-chip companies—companies that are well-known, well-established, and well-capitalized—which generally have large or medium market capitalizations.

96. Like the NYLI Winslow Fund, the Fidelity Growth Fund identifies the Russell 1000 Growth Index as one of its benchmarks.

97. Morningstar classifies the Fidelity Growth Fund as a large-cap growth fund. Currently, approximately 85-90% of the Fidelity Growth Fund's portfolio is invested in large-cap stocks, with

the overwhelming majority of those holdings reflecting growth-oriented investment characteristics. The remainder is invested in bonds, cash, and cash equivalents.

98. The Fidelity Growth Fund's potential rewards are that the fund will generate positive investment returns that outperform its benchmark index. The Fidelity Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

99. The aims, risks, and potential rewards of the Fidelity Growth Fund are similar to those of the NYLI Winslow Fund given the similarities in the two funds' investment strategies and the types of stocks the two funds own. Moreover, both funds are actively managed investment options that seek to outperform relative to the same benchmark, the Russell 1000 Growth Index. These facts make the Fidelity Growth Fund a meaningful comparator to the NYLI Winslow Fund.

**iii. Comparator 3: JPMorgan Growth Advantage R6 Fund (JGVVX)**

100. The JPMCB Large Cap Growth Fund (the "JPMorgan Advantage Fund") has similar aims, risks, and potential rewards to those of the NYLI Winslow Fund.

101. Like the NYLI Winslow Fund, the JPMorgan Advantage Fund is an actively managed large-cap growth fund.

102. The JPMorgan Advantage Fund's aim is to seek long-term capital appreciation. The JPMorgan Fund pursues its aim by investing primarily in equity securities of large-capitalization companies whose market capitalizations are similar to those within the universe of the Russell 1000 Growth Index. The JPMorgan Advantage Fund typically invests in stocks of companies that are deemed to have a potential to exceed market expectations for a prolonged period of time.

103. Like the NYLI Winslow Fund, the JPMorgan Advantage Fund identifies the Russell 1000 Growth Index as one of its benchmarks. Morningstar classifies the JPMorgan Advantage Fund as a large-cap growth fund. Currently, approximately 75–85% of the Fund's portfolio is invested in large-cap stocks, while the overwhelming majority of the portfolio reflects growth-oriented

investments. The remainder is invested in cash and cash equivalents.

104. The JPMorgan Advantage Fund's potential rewards are that the fund will generate positive investment returns that outperform its benchmark index. The JPMorgan Advantage Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

105. The aims, risks, and potential rewards of the JPMorgan Advantage Fund are similar to those of the NYLI Winslow Fund given the similarities in the two funds' investment strategies and the types of stocks the two funds own. Moreover, both funds are actively managed investment options that seek to outperform relative to the same benchmark, the Russell 1000 Growth Index. These facts make the JPMorgan Advantage Fund a meaningful comparator to the NYLI Winslow Fund.

**iv. Comparator 4: JPMorgan Large Cap Growth R6 Fund (JLGMX)**

106. The JPMorgan Large Cap Growth R6 Fund (JPMorgan Large Cap Fund") has similar aims, risks, and potential rewards to those of the NYLI WINSLOW Fund.

107. Like the NYLI Winslow Fund, the JPMorgan Large Cap Fund is an actively managed large-cap growth fund.

108. The aim of the JPMorgan Large Cap Fund is to generate long-term capital growth in excess of its benchmark index. The JPMorgan Large Cap Fund pursues its aim, under normal circumstances, by investing at least 80% of its net assets in companies of a size similar to those in the Russell 1000 Growth Index, mainly in common stocks of large U.S. Companies with a focus on growth stocks.

109. Like the NYLI Winslow Fund, the JPMorgan Large Cap Fund identifies the Russell 1000 Growth Index as one of its benchmarks.

110. Morningstar classifies the JPMorgan Large Cap Fund as a large-cap growth fund. Currently, approximately 80%-90% of the JPMorgan Large Cap Fund's portfolio is invested in large-

cap stocks, while the overwhelming majority of the portfolio reflects growth-oriented investments. The remainder is invested in cash and cash equivalents.

111. The JPMorgan Large Cap Fund's potential rewards are that the fund will generate positive investment returns that outperform its benchmark index. The JPMorgan Large Cap Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

112. The aims, risks, and potential rewards of the JPMorgan Large Cap Fund are similar to those of the NYLI Winslow Fund given the similarities in the two funds' investment strategies and the types of stocks the two funds own. Moreover, both funds are actively managed investment options that seek to outperform relative to the same benchmark, the Russell 1000 Growth Index. These facts make the JPMorgan Large Cap Fund a meaningful comparator to the NYLI Winslow Fund.

**v. Comparator 5: Voya Russell Large Cap Growth Index Port I Fund (IRLNX)**

113. The Voya Russell Large Cap Growth Index Port I Fund (the "Voya Fund") is a passively managed index fund that seeks to track the performance of a benchmark index that measures the investment return of large-capitalization growth stocks in the United States (i.e., the Russell 1000 Growth Index). The Voya Fund attempts to replicate the Russell 1000 Growth Index by investing all, or substantially all, of its assets in the stocks that make up the Index, holding each stock in approximately the same proportion as its weighting in the Index.

114. Currently, and based on the Voya Fund's index-tracking strategy and Morningstar's classification of the Fund within the "Large Growth" category, approximately 90% or more of the portfolio is invested in large-cap stocks, and virtually all of the equity holdings reflect growth-oriented investment characteristics. The remainder of the portfolio is generally invested in limited cash positions, cash equivalents, or ancillary holdings used for liquidity and index-tracking purposes.

115. The Voya Fund's potential rewards are that it will generate investment returns in line

with the Russell 1000 Growth Index. The Voya Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) investing in growth-oriented stocks.

116. By virtue of the similarities in their respective market capitalizations, the Voya Fund and the NYLI Winslow Fund share similar aims, rewards, and levels of risk. This makes the Voya Fund a meaningful Comparator for the NYLI WINSLOW Fund. Indeed, by disclosing the Russell 1000 Growth Index to the public as the appropriate benchmark for the NYLI WINSLOW Fund, Winslow necessarily concludes that the Russell 1000 Growth Index shares similar aims, risks, and rewards as the NYLI Winslow Fund. The Voya Fund shares those aims, risks, and rewards, as it is designed to mirror the composition and performance of the Russell 1000 Growth Index.

## VIII. THE NYLI WINSLOW FUND UNDERPERFORMED ITS BENCHMARK AND COMPARATOR FUNDS FOR OVER A DECADE

117. Defendants are required by law to monitor the Plan's investments and remove imprudent ones. They must perform these duties with the skill of a prudent expert.

118. For a prudent fiduciary, investment options that, on average, underperform their benchmarks over rolling three-, five-, or ten-year periods are generally candidates for removal. Upon information and belief, such guidelines are often outlined in a plan's investment policy statement.

119. Had the MathWorks Defendants fulfilled their duty with the care and skill of a prudent fiduciary, they would have removed the NYLI Winslow Fund by the start of the Class Period in May 2020. Indeed, by December 31, 2019, the NYLI Winslow Fund had underperformed each of the Russell 1000 Growth Index, the Fidelity Blue Chip Fund, the Fidelity Growth Fund, the JPMorgan Advantage Fund, the JP Morgan Large Cap Fund, and the Voya Fund ("Comparator Funds") over the preceding three-, five-, and ten-year periods.

120. By early 2020, any fiduciary properly monitoring the Plan would have seen that the circumstances warranted the selection of a new option. Yet, MathWorks failed to replace the NYLI Winslow Fund with any one of the many prudent alternatives available on the market.

121. **Table 1.a** below demonstrates the underperformance of the NYLI Winslow Fund compared to its benchmark index and to the Comparator Funds for the ten-year period from January 1, 2010, through December 31, 2019. By late 2019, any prudent fiduciary would have recognized that the NYLI Winslow Fund should have been removed.

**Table 1.a**
**January 1, 2010 - December 31, 2019**

| Fund | Cumulative Return | Annualized Return |
|---|---|---|
| NYLI Winslow Large Cap Growth Class I | 276.78% | 14.18% |
| Russell 1000 Growth TR USD | 312.34% | 15.22% |
| *+/- NYLI Winslow* | *-35.55%* | *-1.03%* |
| Fidelity Blue Chip Growth K | 340.63% | 15.99% |
| *+/- NYLI Winslow* | *-63.85%* | *-1.80%* |
| Fidelity Growth Company K | 373.24% | 16.82% |
| *+/- NYLI Winslow* | *-96.46%* | *-2.63%* |
| JPMorgan Growth Advantage R6 | 344.86% | 16.10% |
| *+/- NYLI Winslow* | *-68.08%* | *-1.91%* |
| JPMorgan Large Cap Growth R6 | 332.61% | 15.77% |
| *+/- NYLI Winslow* | *-55.83%* | *-1.59%* |
| Voya Russell Large Cap Growth Idx Port I | 306.83% | 15.06% |
| *+/- NYLI Winslow* | *-30.05%* | *-0.88%* |

122. Yet the Defendants failed to remove the NYLI Winslow Fund. And the NYLI Winslow Fund continued to perform poorly throughout the Class Period.

123. **Table 1.b**, below, illustrates the underperformance of the NYLI Winslow Fund from January 1, 2020, through December 31, 2025, on an annual and cumulative basis relative to the Russell 1000 Growth Index and the Comparator Funds. The NYLI Winslow Fund underperformed the Russell 1000 Growth Index by nearly 32% during this period.

**Table 1.b**
**January 1, 2020 - December 31, 2025**

| Fund | Annual Performance | | | | | | Cumulative Performance |
|---|---|---|---|---|---|---|---|
| | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | |
| NYLI Winslow Large Cap Growth Class I | 37.38% | 24.81% | -31.25% | 42.99% | 29.72% | 14.60% | **150.57%** |
| Russell 1000 Growth TR USD | 38.49% | 27.60% | -29.14% | 42.68% | 33.36% | 18.56% | **182.49%** |
| *+/- NYLI Winslow* | *-1.11%* | *-2.79%* | *-2.11%* | *0.31%* | *-3.64%* | *-3.96%* | ***-31.91%*** |
| Fidelity Blue Chip Growth K | 62.38% | 22.81% | -38.40% | 55.76% | 39.80% | 19.99% | **220.93%** |
| *+/- NYLI Winslow* | *-24.99%* | *2.00%* | *7.16%* | *-12.77%* | *-10.09%* | *-5.39%* | ***-70.35%*** |
| Fidelity Growth Company K | 67.69% | 22.73% | -33.74% | 47.33% | 37.31% | 24.42% | **243.20%** |
| *+/- NYLI Winslow* | *-30.31%* | *2.08%* | *2.50%* | *-4.34%* | *-7.59%* | *-9.82%* | ***-92.63%*** |
| JPMorgan Growth Advantage R6 | 54.00% | 22.50% | -29.88% | 40.47% | 31.43% | 16.06% | **183.41%** |
| *+/- NYLI Winslow* | *-16.61%* | *2.31%* | *-1.37%* | *2.52%* | *-1.71%* | *-1.46%* | ***-32.84%*** |
| JPMorgan Large Cap Growth R6 | 56.42% | 18.79% | -25.21% | 34.95% | 34.17% | 14.40% | **187.85%** |
| *+/- NYLI Winslow* | *-19.03%* | *6.02%* | *-6.03%* | *8.04%* | *-4.45%* | *0.19%* | ***-37.27%*** |
| Voya Russell Large Cap Growth Idx Port I | 38.46% | 30.66% | -30.03% | 45.99% | 34.60% | 18.12% | **193.85%** |
| *+/- NYLI Winslow* | *-1.08%* | *-5.86%* | *-1.22%* | *-3.00%* | *-4.88%* | *-3.53%* | ***-43.27%*** |

124. The annualized performance numbers in **Table 1.b** highlight the overall underperformance of the NYLI Winslow Fund. Though the NYLI Winslow Fund occasionally outperformed its benchmark and certain Comparator Funds, that outperformance was overshadowed by the multiple years in which the NYLI Winslow Fund underperformed its benchmark and Comparators. The magnitude of this underperformance is captured by the cumulative numbers in **Table 1.b**. Overall, the NYLI Winslow Fund remained an imprudent investment for the Plan.

125. Together, **Tables 1.a** and **1.b** capture the depth and the breadth of the NYLI Winslow Fund's underperformance relative to meaningful benchmarks that has persisted for more than fifteen years.

126. All the data presented in each of the above **Tables 1.a** and **1.b** was available in real time, not in hindsight, to the MathWorks Defendants throughout the Class Period.

127. Defendants' failure to remove the NYLI Winslow Fund cost Plan participants millions of dollars in retirement savings. On average, during the period from January 1, 2020, through December 31, 2025, the assets of the NYLI Winslow Fund were approximately $63,242,791. **Table 1.c** below compares the investment growth of $63,242,791 invested in the NYLI Winslow Fund to the growth of $63,242,791 invested in each of the Comparator Funds from January 1, 2020, through December 31, 2025. As the Table shows, Participants would have substantially more dollars in retirement savings had Defendants replaced the NYLI Winslow Fund with any of the Comparator Funds or a fund that more closely matched the Russell 1000 Growth Index.

**Table 1.c**
**January 1, 2020 - December 31, 2025**

| Fund | Cumulative Performance | Annualized Performance | Growth of $63,242,791 |
|---|---|---|---|
| NYLI Winslow Large Cap Growth Class I | 150.57% | 16.54% | $158.5 million |
| Russell 1000 Growth TR USD | 182.49% | 18.90% | $178.7 million |
| *+/- NYLI Winslow* | *-31.91%* | *-2.35%* | *-$20.2 million* |
| Fidelity Blue Chip Growth K | 220.93% | 21.45% | $203.0 million |
| *+/- NYLI Winslow* | *-70.35%* | *-4.91%* | *-$44.5 million* |
| Fidelity Growth Company K | 243.20% | 22.82% | $217.0 million |
| *+/- NYLI Winslow* | *-92.63%* | *-6.27%* | *-$58.6 million* |
| JPMorgan Growth Advantage R6 | 183.41% | 18.96% | $179.2 million |
| *+/- NYLI Winslow* | *-32.84%* | *-2.42%* | *-$20.8 million* |
| JPMorgan Large Cap Growth R6 | 187.85% | 19.27% | $182.0 million |
| *+/- NYLI Winslow* | *-37.27%* | *-2.73%* | *-$23.6 million* |
| Voya Russell Large Cap Growth Idx Port I | 193.85% | 19.68% | $185.8 million |
| *+/- NYLI Winslow* | *-43.27%* | *-3.14%* | *-$27.4 million* |

128. The Comparator Funds listed in each of the above Tables are managed by reputable investment advisers with significant assets under management and are available to all large retirement plans, including to the MathWorks's Plan. MathWorks would not have had to scour the market to find them.

129. Defendants owed a fiduciary duty to remove the NYLI Winslow Fund within a reasonable time after it manifested poor performance. Yet they retained the Fund year after year, even though it consistently failed its objectives. Any prudent fiduciary would have appreciated the overall

depth of the NYLI Winslow Fund's underperformance and removed it by the start of the Class Period. No prudent fiduciary would have retained the Fund, like MathWorks has, throughout the Class Period.

## IX. MISALLOCATION OF PLAN FORFEITURES

130. In the MathWorks Plan, no priority exists as far as how to allocate Plan forfeitures for the permitted uses. MathWorks had a discretionary decision to make as far as whether to use the Plan forfeitures to reduce the Plan expenses for participants or to reduce company-matching contributions.

131. MathWorks, without considering whether participant expenses should instead be reduced, offset its own contributions to the Plan rather than paying any Plan expenses for Plan participants.

132. During the Class Period alleged herein, according the September 2025 Section 404a-5 participant fee disclosure, "[a] $100 annual per participant fee will be deducted from your account in the Plan. This $100 per participant fee will be applied quarterly ($25) and used to pay recordkeeping, accounting, legal, and other plan expenses. Schwab's trust, custody, and recordkeeping fees are $45 of your total account per year and are included in the $100 annual per participant fee."

133. The deduction of the Plan's administrative expenses from the participants' accounts reduces the funds available to participants for distribution and/or investing, and deprives the Plan of funds that otherwise would have been earned on the amounts deducted.

134. MathWorks consistently exercised its discretion regarding Plan forfeitures between May 21, 2020 and December 31, 2024 by using forfeitures to reduce employer contributions rather than pay Plan expenses, even though the Plan permitted forfeitures to be used for either purpose.

135. The Audited Financials to the MathWorks 5500 forms have identical language from 2020-2024, stating how much of the Plan forfeitures were used and for what purpose. Audited Financial Statement footnotes (attached to Plan 5500 Forms), and signed by an independent third-

party auditor, also provide current forfeiture year-end balance and previous year end balance for the MathWorks Plan.

136. The Audited Financials to the MathWorks Plan 5500 Forms from 2020 states: "Forfeitures of the non-vested portion of terminated employees' accounts *may be used to pay eligible plan expenses or reduce future employer matching contributions*. During 2020, forfeited non-vested accounts totaling $668,757 were used to reduce employer matching contributions. At December 31, 2020 and 2019, there was a $12,850 and $16,433 balance in the forfeiture account, respectively" (emphasis added).

137. The Audited Financials to the MathWorks Plan 5500 Forms from 2021 state: "Forfeitures of the non-vested portion of terminated employees' *accounts may be used to pay eligible plan expenses or reduce future employer matching contributions*. During 2021, forfeited non-vested accounts totaling $652,342 were used to reduce employer matching contributions. At December 31, 2021 and 2020, there was a $38,151 and $12,850 balance in the forfeiture account, respectively." (emphasis added).

138. The Audited Financials to the MathWorks Plan 5500 Forms from 2022 state: "Forfeitures of the non-vested portion of terminated employees' accounts *may be used to pay eligible plan expenses or reduce future employer matching contributions*. During 2022, forfeited non-vested accounts totaling $575,377 were used to reduce employer matching contributions. At December 31, 2022 and 2021, there was a $45,545 and $38,151 balance in the forfeiture account, respectively." (emphasis added).

139. The Audited Financials to the MathWorks Plan 5500 Forms from 2023 state: "Forfeitures of the non-vested portion of terminated employees' accounts *may be used to pay eligible plan expenses or reduce future employer matching contributions*. During 2023, forfeited non-vested accounts totaling $721,328 were used to reduce employer matching contributions. At December 31,

2023 and 2022, the balance in the forfeiture account was $8,978 and $45,545, respectively." (emphasis added).

140. The Audited Financials to the MathWorks Plan 5500 Forms from 2024 state: "Forfeitures of the non-vested portion of terminated employees' accounts *may be used to pay eligible plan expenses or reduce future employer matching contributions*. During 2024, forfeited non-vested accounts totaling $1,073,411 were used to reduce employer matching contributions. At December 31, 2024 and 2023, the balance in the forfeiture account was $10,712 and $8,978, respectively." (emphasis added).

141. Based on the numbers from the 2020 through 2024, where the language concerning the payment of administrative expenses does not appear, it is possible to infer that all of the Plan forfeitures were used to "reduce future employer matching contributions."

142. MathWorks from 2020-2024 did not use Plan forfeitures at all to reduce the Plan's administrative expenses.

143. The following chart shows MathWorks Plan use of forfeiture allocations through December 31, 2024:

**Failure to Use Forfeited Plan Assets to Defray Reasonable Plan Expenses**

| | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|
| Plan Expenses via Direct Comp | $543,665 | $482,040 | $529,507 | $558,346 | $622,075 |
| Available Forfeitures | $681,607 | $690,493 | $620,922 | $730,306 | $1,084,123 |
| **Forfeitures Not Used to Defray Reasonable Plan Expenses** | **$543,665** | **$482,040** | **$529,507** | **$558,346** | **$622,075** |
| Compounding Percentage (VIIIX) | | 28.69% | -18.13% | 26.26% | 24.99% |
| **Compounded for Lost Earnings** | **$543,665** | **$1,181,682** | **$1,496,950** | **$2,448,396** | **$3,682,325** |

144. Using the forfeitures to reduce future employer contributions is usually, but not always, in the best interest of MathWorks because that option decreases its own contribution costs and means

that MathWorks does not need to take money out of its own general revenues to pay for Plan contributions.

145. The option to reduce future employer contributions is not always in MathWorks' best interest and in limited circumstances, fiduciaries could potentially conclude that there is a risk that MathWorks may be financially unable to satisfy its contribution obligations.

146. Absent a risk that MathWorks would be unable to satisfy its contribution obligations under the MathWorks Plan, however, using forfeitures to pay Plan expenses would be in the participants' best interest because that option would reduce or eliminate amounts otherwise charged to their accounts to cover such administrative expenses.

147. Here, there existed no reason why MathWorks could not satisfy its contribution obligations without Plan forfeitures.

148. In using Plan forfeitures solely to reduce its own employer contributions from 2020-2024, and possibly through present, even though it was permitted to use those Plan forfeitures to pay administrative expenses for Plan participants, MathWorks consistently selected the option that reduced corporate contribution obligations.

149. The Plan sponsor, acting in a settlor capacity, merely established a menu of permissible uses for forfeitures. Once the Plan granted fiduciaries discretion to choose among those alternatives in administering Plan assets, the actual allocation decision became subject to ERISA's fiduciary duties of loyalty and prudence.

150. A plan fiduciary that exercises discretion to use forfeited plan assets to defray plan expenses is not providing a benefit greater than what was required or intended by the plan sponsor/employer (settlor).

151. Rather, plans that grant discretion to plan fiduciaries to choose among multiple different options for allocating forfeited plan assets, including to defray plan expenses, necessarily contemplate that plan expenses will be defrayed if doing so accords with ERISA's fiduciary standards.

152. A plan fiduciary making fiduciary decisions based on the discretion granted by the plan sponsor/employer is explicitly prohibited by ERISA from considering the interest of the employer.

153. There is no dispute that under the terms of the Plan, defraying plan expenses was an allowable use of Plan forfeitures.

154. Accordingly, from the beginning of the Class Period through present, a prudent fiduciary as part of a prudent fiduciary process would have always considered whether using Plan forfeitures to defray Plan expenses was more consistent with their duties under the plan and ERISA than using Plan forfeitures to offset Company contributions.

155. ERISA's fiduciary duty of prudence is violated where, as here, MathWorks failed to conduct any investigation as to which choice would be in the best interest of the participants.

156. If MathWorks had employed a prudent process from the beginning of the Class Period, MathWorks would have used the Plan forfeitures to defray some or all Plan expenses.

157. In fact, however, MathWorks allocated none of the Plan forfeitures to defray Plan expenses from the beginning of the Class Period through at least December 31, 2024.

158. In other words, MathWorks imprudently coordinated with the Plan's recordkeeper to calculate how much of the Plan forfeitures would be used to offset MathWorks' employer contributions, while allowing Plan expenses to be deducted from the accounts of Plan participants, like Plaintiffs.

159. Because MathWorks always had the ability to defray Plan expenses with Plan forfeitures from the beginning of the Class Period through December 31, 2024, but never did so, it is

reasonable to infer that MathWorks employed a flawed decision-making process or did not employ any process at all to determine how to allocate Plan forfeitures during this time period.

160. Plaintiffs are unaware of any facts suggesting that MathWorks investigated whether there was any set of circumstances that would support a decision to reduce MathWorks Plan contributions prior to defraying Plan expenses, and Plaintiffs are unaware of any facts suggesting that MathWorks' failure to use Plan forfeitures to defray Plan expenses was prudent under the circumstances.

161. ***First***, Plaintiffs are unaware of any facts suggesting that using Plan forfeitures to offset employer contributions was necessary to maintaining those contribution levels, as there are no facts or circumstances to suggest that MathWorks' process in determining the amount of its Plan contributions is based on any consideration of the amount of Plan forfeitures.

162. In fact, just like all other companies that have discretionary contribution provisions, from the beginning of the Class Period through December 31, 2024, MathWorks' decisions related to employer contributions were made without reference to the amount of Plan forfeitures and were instead driven by the need to attract and retain talented employees.

163. Companies like MathWorks actually use their past benefit history to both attract new employees and promote to their existing employees the benefits provided by the plan design even if those benefits are discretionary.

164. On the other hand, Plan administrative expenses are immaterial to both MathWorks' decision to provide a discretionary employer contribution, as well as to MathWorks' financial results.

165. ***Second***, upon information and belief, Defendants did not conduct an analysis to show that they would be unable to meet its future Plan contribution obligations, such that using Plan forfeitures to offset employer contributions was necessary from the beginning of the Class Period through December 31, 2024.

166. Upon information and belief, MathWorks was able to meet its future contributions from the beginning of the Class Period through December 31, 2024, and would have been able to meet its declared employer contributions each year, even if no Plan forfeitures were applied to offset its contributions.

167. Consequently, an objective analysis of the available options from the beginning of the Class Period through December 31, 2024, guided by ERISA's fiduciary duty of prudence, would not result in MathWorks choosing to use nearly all Plan forfeitures available to offset future employer contributions during that period instead of using Plan forfeitures to defray some or all Plan expenses borne by Plaintiffs and other Plan participants.

168. Instead of acting prudently by using Plan forfeitures to defray Plan expenses charged to the individual accounts of Plan participants on an ongoing basis, MathWorks chose to use all the Plan forfeitures for the exclusive purpose of offsetting its employer contributions to the Plan, thereby reducing MathWorks' contribution obligations while participants continued to incur Plan expense deductions.

169. Defendants should have used the fiduciary discretion granted to it to pay Plan expenses of Plan participants. Defendants' contrary fiduciary decision with regard to the MathWorks Plan forfeitures cost the Plans' participants more than $3.5 million excluding lost investment growth, from 2020 to the present.

170. MathWorks received a benefit while participants simply received that which they would have received anyway, while remaining on the hook for paying their share of the Plans' administrative expenses.

171. Prudent fiduciaries following a prudent process would not choose to offset MathWorks' declared employer contributions instead of reducing the Plan participants' Plan expenses.

172. While MathWorks' decisions to use the Plan's forfeitures to reduce its outstanding and

unpaid contributions benefitted itself by lowering its costs, it harmed the Plan, along with its participants and beneficiaries, by reducing the amount of assets the Plan otherwise would have received and by causing deductions from participants' accounts to cover expenses that otherwise would have been covered in whole or in part by the Plan's forfeitures.

## X. CLASS ACTION ALLEGATIONS

**Imprudent Investment Class**

173. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a). Plaintiffs Robert J. Graessle and Michael Nolan bring this suit in a representative capacity on behalf of the Plan and its participants and beneficiaries pursuant to 29 U.S.C. § 1132(a), seeking appropriate Plan-wide relief under 29 U.S.C § 1109 to protect the interests of the Plan.

174. In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to a direct individual action on behalf of the Plan under 29 U.S.C. § 1132(a)(2), Plaintiffs seek to certify this action as a class action on behalf of participants and beneficiaries of the Plan who invested in the NYLI Winslow Fund during the Class Period. Specifically, Plaintiffs seek to certify, and to be appointed as representatives of, the following Imprudent Investment Class:

> All participants and beneficiaries of the Plan who invested in the NYLI Winslow Fund from May 21, 2020, through the date of judgment, excluding the MathWorks Defendants, any of their directors, and any officers or employees of MathWorks Defendants with responsibility for the Plan's investment or administrative function.

175. This Imprudent Investment Class meets the requirements of Federal Rule of Civil Procedure 23 and is certifiable as a class action for the following reasons:

a. The Class includes thousands of members and is so large that joinder of all its members is impracticable.

b. There are numerous questions of law and fact common to this Class because the MathWorks Defendants owed the same fiduciary duties to the Plan and to all participants and beneficiaries and took a common course of actions and omissions as alleged herein as to the Plan, and not as to any individual participant, that affected all Class members through their participation in the Plan in the same way. Thus, questions of law and fact common to the Class include, without limitation, the following: (i) whether each of the Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a); (ii) whether the fiduciaries of the Plan breached their fiduciary duties to the Plan by employing an imprudent process for monitoring and evaluating Plan investment options; (iii) whether the fiduciaries of the Plan breached their fiduciary duties to the Plan by retaining an imprudent investment for an unreasonable amount of time; (iv) whether Plaintiffs' claims of an imprudent process require similar inquiries and proof of the claims, and therefore implicate the same set of concerns, for all proposed members of the Class; (v) what are the losses to the Plan resulting from each breach of fiduciary duty; and (vi) what Plan-wide equitable and other relief the Court should impose in light of the MathWorks Defendants' breach of duties. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs were Plan participants who invested in the NYLI Winslow Fund during the Class Period, and all participants in the Plan who invested in the NYLI Winslow Fund were harmed by the MathWorks Defendants' misconduct.

c. Plaintiffs are adequate representatives of the Class because they participated in the Plan during the Class Period, invested in the NYLI Winslow Fund, have no interest that conflicts with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent attorneys to represent the

Class.

d. There are no substantial individualized questions of law or fact among Class members on the merits of this Action.

176. Prosecution of separate actions for these imprudent investment breaches of fiduciary duties by individual participants and beneficiaries would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the MathWorks Defendants in respect to the discharge of their fiduciary duties to the Plan and their personal liability to the Plan under 29 U.S.C. § 1109(a). Moreover, adjudications by individual participants and beneficiaries regarding the alleged breaches of fiduciary duties, and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

177. Additionally, or in the alternative, certification under Rule 23(b)(2) is appropriate because the MathWorks Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole. Plaintiffs seek reformation of the Plan to include only prudent investments, which will benefit them and other Plan participants.

**Forfeiture Class**

178. In acting in his representative capacity for the MathWorks Plan, Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the MathWorks Plan. Plaintiffs seek to certify, and to be appointed as representative of, the following Forfeiture Class:

> All participants and beneficiaries of The MathWorks 401(k) Retirement Plan (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan) beginning May 21, 2020, and running through the date of Judgment.

179. The Forfeiture Class includes approximately thousands of employees and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

180. There are questions of law and fact common to this Forfeiture Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owed fiduciary duties to the MathWorks Plan and took the actions and omissions alleged as to the Plan and not as to any individual participant. Common questions of law and fact include but are not limited to the following:

a. Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

b. What are the losses to the Plan resulting from each breach of fiduciary duty and prohibited transaction; and

c. What Plan-wide equitable and other relief the Court should impose in light of Defendants' breach of fiduciary duty and prohibited transactions.

181. Plaintiffs' claims are typical of the claims of the Forfeiture Class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs were participants of the MathWorks Plan during the time period at issue and all participants in the Plan were harmed by Defendants' misconduct.

182. Plaintiffs will adequately represent the Forfeiture Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because they were participants in the Plans during the Class period, have no interests that conflict with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent lawyers to represent the Class.

183. Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are

not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

184. Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Forfeiture Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

185. Plaintiffs' counsel will fairly and adequately represent the interests of the Imprudent Investment and Forfeiture Classes and is best able to represent the interests of the Classes under Rule 23(g).

## CAUSES OF ACTION

## COUNT I

**Breach of Duty of Prudence by Mismanaging and Failing to Remove Imprudent Investments from the Plan Within a Reasonable Time**
**(Violation of ERISA, 29 U.S.C. § 1104)**
**(Against All MathWorks Defendants)**

186. All allegations set forth in the Complaint are realleged and incorporated herein by reference.

187. At all relevant times during the Class Period, the MathWorks Defendants acted as fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A) by exercising authority and control with respect to the management of the MathWorks Plan and its assets, and/or by rendering investment advice or by having authority or responsibility to render investment advice to the Plan, and/or were designated in the governing Plan documents as a named fiduciary within the meaning of 29 U.S.C. § 1102(a).

188. 29 U.S.C. § 1104(a)(1)(B) requires a plan fiduciary to act with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and

with like aims."

189. Thus, under ERISA, the MathWorks Defendants are responsible for evaluating and monitoring the Plan's investments on an ongoing basis, eliminating imprudent investments, and taking all necessary steps to ensure the Plan's assets are invested prudently.

190. The MathWorks Defendants breached their fiduciary duties through an imprudent process for investigating, evaluating, and monitoring investments. The faulty process resulted in a Plan that included a fund that suffered poor performance for well over a decade. MathWorks Defendants failed to remove the NYLI Winslow Fund within a reasonable time despite historical underperformance relative to its relevant benchmark index and Comparator Funds.

191. By failing to replace the NYLI Winslow Fund with (a) a better-performing actively managed investment option, or (b) with a cheaper and better performing passively managed investment option (such as the Voya fund identified above), the MathWorks Defendants failed to discharge their duties with the care, skill, prudence, and diligence that a prudent fiduciary acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

192. The MathWorks Defendants' breach of fiduciary duty has substantially impaired the Plan's use, its value, and its investment performance for all Class members.

193. As a direct and proximate result of the MathWorks Defendants' breaches of fiduciary duty, the Plan has suffered millions of dollars of damages which continue to accrue and for which the MathWorks Defendants are jointly and severally liable pursuant to 29 U.S.C. §§ 1132(a)(2) and 1109(a).

194. Each of the MathWorks Defendants is liable to make good to the Plan any losses resulting from the aforementioned breaches and to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count. The MathWorks Defendants are also subject to other

Plan-wide equitable or remedial relief as appropriate, including an injunction and the removal of fiduciaries.

195. Each MathWorks Defendant also participated in the breach of the other MathWorks Defendants, knowing that such acts were a breach, and enabled the other MathWorks Defendants to commit a breach by failing to lawfully discharge their own fiduciary duties. Each MathWorks Defendant knew of the breach by the other MathWorks Defendants yet failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each MathWorks Defendant is liable for any losses caused by the breach of its co-fiduciary duties under 29 U.S.C. § 1105(a).

## COUNT II

### Failure to Monitor
### (Against All MathWorks Defendants)

196. All allegations set forth in the Complaint are realleged and incorporated herein by reference.

197. The MathWorks Defendants had a duty to monitor the performance of each party to whom they delegated any fiduciary responsibilities. A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of Plan assets, and must take prompt and effective action to protect the Plan and participants when they are not.

198. To the extent any MathWorks Defendants' fiduciary responsibilities were delegated to another fiduciary, the MathWorks Defendants' monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently, loyally, and in compliance with governing Plan documents.

199. The MathWorks Defendants breached their fiduciary monitoring duties by, among other things:

a. failing to monitor their appointees, to evaluate their performance, or to have a

system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of their appointees' actions and omissions in violation of ERISA;

b. failing to monitor their appointees' fiduciary process;

c. failing to ensure that the monitored fiduciaries had a prudent process in place for evaluating and ensuring that investment options were prudent; and

d. failing to remove appointees whose performance was inadequate in that they continued to allow investment options that were imprudent and otherwise violated ERISA to remain in the Plan, to the detriment of Plan participants' retirement savings.

200. Each fiduciary who delegated its fiduciary responsibilities likewise breached its fiduciary monitoring duty by, among other things:

a. failing to monitor their appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of their appointees' actions and omissions in violation of ERISA;

b. failing to monitor their appointees' fiduciary process;

c. failing to ensure that the monitored fiduciaries had a prudent process in place for evaluating and ensuring that investment options were prudent; and

d. failing to remove appointees whose performance was inadequate in that they continued to allow investment options that were imprudent and otherwise violated ERISA to remain in the Plan, to the detriment of Plan participants' retirement savings.

201. As a direct result of these breaches of the fiduciary duty to monitor, the Plan suffered substantial losses. Had MathWorks and the other delegating fiduciaries discharged their fiduciary monitoring duties, the Plan would not have suffered these losses.

## COUNT III

**Breach of the Duty of Loyalty**
**Misallocation of Plan's Forfeitures**
**(Against All MathWorks Defendants)**

202. Plaintiffs restate the above allegations as if fully set forth herein.

203. Defendants are fiduciaries of the MathWorks Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

204. Pursuant to 29 U.S.C. § 1104(a)(1)(A), MathWorks was required to discharge its duties to the MathWorks Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

205. MathWorks has continually breached this duty of loyalty with respect to their control and management of the MathWorks Plan's assets throughout the Class Period by choosing to utilize forfeited funds in the Plan for the exclusive benefit of MathWorks rather than solely in the interest of the Plan's participants and beneficiaries.

206. Instead of acting solely in the interest of the Plan's participants by utilizing forfeited funds in the Plan to reduce or eliminate Plan expenses, MathWorks chose to use the Plan's assets primarily to reduce MathWorks' contribution obligations, thereby saving MathWorks millions of dollars at the expense of the Plan and its participants, who were forced to incur avoidable Plan expense deductions to their individual accounts.

207. In making these Plan forfeiture decisions, MathWorks was motivated primarily or exclusively by its own self-interest rather than the interests of the Plan's participants and beneficiaries, in violation of ERISA's fiduciary duty of loyalty.

208. As a direct and proximate result of MathWorks' fiduciary breaches described herein, the Plan suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of loyalty.

## COUNT IV

### Breach of the Duty of Prudence
### Misallocation of Plan's Forfeitures
### (Against All MathWorks Defendants)

209. Plaintiffs restate the above allegations as if fully set forth herein.

210. Pursuant to 29 U.S.C. § 1104(a)(1)(B), MathWorks was required to discharge its duties with respect to the MathWorks Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

211. MathWorks has continuously breached its duty of prudence under 29 U.S.C. § 1104(a)(1)(B) throughout the Class Period by declining to use the forfeited funds in the Plan to eliminate or reduce the Plan expenses charged to participant accounts, and instead used the Plan's forfeitures to reduce MathWorks' contributions to the Plan.

212. In deciding how to allocate forfeitures, MathWorks utilized an imprudent and flawed process. Despite the conflict of interest presented by their forfeitures allocation decisions, Defendants failed to undertake any reasoned and impartial decision-making process to determine whether using the forfeited funds in the Plan to reduce the Company's own contributions, as opposed to the Plan expenses charged to participant accounts, was prudent, and failed to consider whether participants would be better served by another use of these forfeiture assets after considering all relevant factors.

213. By refusing to use forfeited funds in the Plan to eliminate or reduce the Plan expenses charged to participant accounts, and instead deciding to use the Plan's forfeiture to reduce MathWorks'

own contributions to the Plan, Defendants caused the Plan to receive fewer contributions that would otherwise have increased Plan's assets and caused participants to incur expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the forfeited funds to pay Plan expenses, as discretionarily permitted under the Plan.

214. As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of prudence.

**PRAYER FOR RELIEF**

For these reasons, Plaintiffs, on behalf of the MathWorks Plan, and all similarly situated Plan participants and beneficiaries, respectfully request that the Court:

i. find and adjudge that the MathWorks Defendants have breached their fiduciary duties, as described above;

ii. find and adjudge that the MathWorks Defendants are personally liable to make good to the Plan any losses to the Plan resulting from each breach of fiduciary duty to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

iii. order the MathWorks Defendants to make good to the Plan the losses resulting from each breach of fiduciary duty and to restore to the Plan any profits resulting from each breach of fiduciary duty;

iv. find and adjudge that the MathWorks Defendants are liable to the Plan for appropriate Plan-wide equitable relief, including but not limited to restitution and disgorgement;

v. determine the method by which Plan losses under 29 U.S.C. § 1109(a) should be

calculated;

vi. order the MathWorks Defendants to provide all accountings necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C.§ 1109(a);

vii. remove the fiduciaries who have breached their fiduciary duties;

viii. impose surcharge against the MathWorks Defendants and in favor of the Plan all amounts involved in, and all Plan losses arising from, any transactions or fiduciary breaches that were in violation of ERISA;

ix. reform the Plan to include only prudent investments;

x. certify the Class, appoint the Plaintiffs as class representatives, appoint Walcheske & Luzi, LLC and Jonathan M. Feigenbaum, as Class Counsel;

xi. award to the Plaintiffs and the Class their attorney's fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine; order the MathWorks Defendants to pay interest to the extent allowed by law; and

xii. grant such other equitable or remedial relief as the Court deems appropriate.

Respectfully submitted,

Date: May 21, 2026

ROBERT J. GRAESSLE and MICHAEL NOLAN, individually, and as Representatives of a Class of Participants and Beneficiaries of The MathWorks 401(k) Retirement Plan

*/s/ Jonathan M. Feigenbaum*
Jonathan M. Feigenbaum
BBO #546686
184 High Street, Suite 503
Boston, MA 02110
Telephone: (617) 357-9700
jonathan@erisaattorneys.com

**WALCHESKE & LUZI, LLC**

Paul M. Secunda (*pro hac vice* motion pending)
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (414) 828-2372
psecunda@walcheskeluzi.com

*Attorneys for Plaintiffs and Proposed Class*